KIRK SHIVELL, Plaintiff and Appellee, *v.* INOCENCIA, known as SARA, ROSA MARÍA and MARÍA TERESA BARBER BOSCIO, Defendants and Appellants. INOCENCIA, known as SARA BARBER BOSCIO, Plaintiff and Appellee, *v.* FRANCISCA BARBER BOSCIO, assisted by her husband ROBERTO ANNONI, and ROSA MARÍA and MARÍA TERESA BARBER BOSCIO, Defendants and Appellants.

No. R-64-151.     Decided May 21, 1965.

*Frank Vizcarrondo Vivas* and *Pablo Defendini* for appellants. *Enrique Báez García* for Inocencia, known as Sara Barber Boscio. *Ildefonso Freyre* for Kirk Shivell.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Rigau, and Mr. Justice Dávila.

MR. JUSTICE RIGAU delivered the opinion of the Court.

Four sisters, surnamed Barber, acquired by inheritance a property of 63 cuerdas situated in the Municipality of Cabo Rojo. They possess it in equal parts, in undivided joint interest. Those sisters are Inocencia, known as Sara, married to Antonio Comas; Rosa María, single; María Teresa, married to Francisco Silva; and Francisca, married to Roberto Annoni. All of them are of full age.[1]

On July 19, 1962, Sara, Rosa María and María Teresa signed before a notary a contract entitled "PROMISE TO SELL" in which, after identifying the appearing parties—vendors and vendee—and setting forth that the appearing parties are co-owners of a certain property therein described, they declared:

"The three appearing parties declare that the said property is free from liens, without being able to determine at the time of signing this instrument whether or not said property is recorded in the Registry of Property in the name of their predecessors or of another person.

"That the owners of said real property obtained the declaration of heirship from their respective parents Bartolo Barber,

---

[1] Since Inocencia is known as Sara and she signed that name to the contract object of this suit, in order to simplify we shall call her Sara in the course of this opinion.

deceased in Mayagüez on December 31, 1927, and Emilia Boscio, deceased in Mayagüez on April 19, 1957, but the notice of death to the Treasurer of Puerto Rico, for the purposes of the payment of the inheritance tax, has not been processed.

"That the said three appearing parties have agreed TO SELL to the other party of the second part, KIRK SHIVELL, their three interests consisting of each one-fourth, or three-fourths of the entire real property, at the rate of TEN THOUSAND DOLLARS ($10,000) for each interest, or THIRTY THOUSAND DOLLARS ($30,000) for the three interests.

"That the deed of sale of said three interests to KIRK SHIVELL SHALL NOT be executed until the appearing parties of the first part have quieted their titles to the property, that is, (1) by determining whether or not the property is recorded, and (2) if not, by filing the corresponding dominion title proceeding.

"All the expenses incurred in the registration of the property shall be borne in equal parts by the four coowners, unless the material division of the property is made before recording —I mean—filing the dominion title proceeding, in which case the registration expenses shall be borne only by the three appearing parties.

"As consideration for the signing of this instrument of promise to sell, the vendee, KIRK SHIVELL, delivers to the prospective vendors in this act the sum of FIVE HUNDRED DOLLARS ($500), which the vendee shall deduct from the price of THIRTY THOUSAND DOLLARS ($30,000) at the time of executing the deed of sale, if the sale is consummated. If the sale is not consummated through the vendee's fault, or the latter desists from the transaction, he shall forfeit the said amount, which shall remain for the benefit of the appearing parties of the first part, since they have incurred expenses in quieting the title to the property.

"The prospective vendee shall not take possession of the property until the corresponding deed of sale has been executed and the part of the property belonging to the three co-owners appearing herein has been determined."

The contract ends by specifying that the statements therein set forth is what the parties have agreed upon and that they proceed to sign it. The contract is signed by Sara

B. de Comas, Rosa Ma. Barber, María T. B. de Silva, and Kirk Shivell.

Half a year later, after filing and recording a dominion title proceeding over the property in question, of processing the inheritance tax in the Treasury Department, of making the survey and setting up the blueprints and division of the property, and after going through the meetings, discussions and vicissitudes which these real-property transactions entail, particularly if there are several co-owners and more so if they are relatives to each other, the day came for signing the deed of division of the community, which is the step preceding the execution of the sale between the three vendor sisters and the vendee. On that occasion, when the four co-owner sisters appeared at the office of Mr. Enrique Báez García, the attorney who in representation of the vendors had taken the aforementioned legal steps, Roberto Annoni (Francisca Barber's husband) said that he would "not permit" his wife to sign. Francisca did not sign.

In order to understand Annoni's unexpected and surprising attitude, in addition to the meetings and discussions which preceded that day, it will suffice to point out that at one of those meetings Annoni himself was the one who made to vendee Shivell the three propositions which were considered for the physical division of the property, pointing out the lands to be adjudicated to the three vendor sisters, Sara, Rosa María and María Teresa, and the lands which his wife Francisca would retain as her share. The vendee requested three days to think it over, and finally he accepted one of the three propositions made by Annoni. This proposition consisted in dividing the property into two parcels. One parcel of 39 cuerdas would be adjudicated to the three vendor sisters, and the other, of 23 cuerdas, would be adjudicated to Mrs. Annoni. The vendee would buy the property of the three sisters, Sara, Rosa María and María Teresa.

As a result of the situation created by the attitude of Annoni and his wife, two actions were instituted in the Superior Court, Mayagüez Part. The first, No. CS-63-1367, was filed by Mr. Báez García in representation of Sara, Rosa María and María Teresa Barber, against Francisca Barber de Annoni, praying that judgment be rendered decreeing the material division of the property. This case was filed on July 12, 1963. Afterwards, on August 2, 1963, Rosa María and María Teresa joined the defendant, their sister Francisca, thereby ceasing to be plaintiffs. Sara continued as plaintiff. The other case to which we have referred is No. CS-63-1553, on specific performance of contract, filed by Messrs. Iván Reichard and Ildefonso Freyre in representation of vendee Kirk Shivell, against the three vendor sisters. Naturally, in that action Shivell demanded of the three vendor sisters the performance of the obligation assumed by them under the contract of promise to sell executed on July 19, 1962. Shivell's suit is actually one against Rosa María and María Teresa, since Sara has not changed her mind and is willing to sign the deeds of division of the property and to sell to Shivell.

The aforementioned two actions were consolidated and the hearing was held in December 1963. After extensive evidence was heard during two days, the Superior Court made, among others, the following findings of fact:

"4. It was expressly agreed in that contract that Shivell, the prospective vendee, would not take possession of the property until the corresponding deed of sale was executed and the part of the property corresponding to the three co-owners appearing in the said contract had been determined.

"5. Mr. Enrique Báez García was retained by the three Barber sisters to handle the title to the property and to procure its registration in the Registry of Property, and that attorney was commissioned by the three sisters who had signed the contract of promise to sell to take the necessary steps to obtain the material division of the property so that they could perform

the contract to sell to Shivell the divided part of the property which might correspond to the three of them.

"6. Upon recommendation of Mr. Enrique Báez García and for the primary purpose of carrying out the material division of the property, the owners of the property engaged the services of Eduardo Ramírez Santiago, civil engineer and professor of the College of Agriculture, license No. 3458, who surveyed the entire property and set up a blueprint thereof dated September 15, 1962, which was offered and admitted in evidence.

"7. Following instructions of his clients, Mr. Enrique Baéz García filed in this court, in the name of the four Barber-Boscio sisters, a dominion title proceeding, civil case No. CS-62-1875, and obtained an order of approval on March 19, 1963, which dominion title proceeding was recorded in the Registry of Property of San Germán on May 23, 1963, at folio 26, volume 159 of Cabo Rojo, property number 4,825, first registration, on the basis of a certified copy of the order obtained in the office of the clerk of this court by Roberto Annoni, husband of Francisca Barber y Boscio, and presented by Annoni himself in the said Registry of Property. The fees and expenses for such work were paid to Mr. Enrique Báez García by the four Barber sisters.

"8. After the dominion title proceeding was recorded, a meeting was held in the office of Mr. Enrique Báez García at which were present Mr. Comas, husband of Sara Barber, Mr. Annoni, husband of Francisca Barber, Mr. Shivell and his wife, engineer Ramírez Santiago, and Mr. Enrique Báez García; and at that meeting Mr. Annoni, in representation of his wife Francisca Barber, made to Mr. Shivell three different propositions on the material division of the property, so that Mr. Shivell could acquire the divided part corresponding to the three sisters who wished to sell, and to Mrs. Barber de Annoni her divided part which she did not wish to sell."

Consequently, the Superior Court sustained both complaints and ordered the co-owner defendants to execute the deed of division of community, and the vendor defendants to execute the deed of sale of the parcel of 39 cuerdas in favor of vendee Shivell.

Appellants assign eight errors. Numbers 1, 2, 4 and 5 challenge the weighing of the evidence made by the Superior Court. Numbers 6 and 7 refer to the interpretation of the contract of July 19, 1962. Number 8 challenges the reasonability of the division of the property, and the third raises a question of agency which we shall discuss later.

We believe that we can avoid a long recital of facts if, imaginarily, we take a scalpel and making an incision expose the root of the tumor. Annoni wishes to frustrate the performance of the contract of promise to sell signed by the three sisters in July 1962 because if the sale is carried out under the terms of the contract, Shivell would be buying a parcel already materially divided from the main property and of which his wife Francisca would not be co-owner and could not redeem. If, on the contrary, the division is not permitted and Shivell should buy the undivided shares of the three vendor sisters, then Francisca could redeem. This is the core of this case.[2]

The position of Francisca Barber and of her husband Roberto Annoni, whom the sisters Rosa María and María Teresa have joined, is that what the three sisters bound themselves to sell to Shivell is their undivided share of the property. In the preceding paragraph we have explained the reason for this position. Francisca was not one of the vendors, but Rosa María and María Teresa were, and the latter at the last minute decided to favor Francisca's claim. Nothing would prevent them from doing so if they had not contracted with Shivell to the contrary. Sara's and Shivell's position is that the vendors bound themselves to sell, and the vendee bound himself to buy, a certain property already divided from the main property.

---

[2] See § 1412 of the Civil Code. *Cf.* § 1020 of the same Code. 31 L.P.R.A. §§ 3922 and 2886, respectively.

■ As to the errors challenging the weighing of the evidence, we may say the following. We have read the memoranda and the briefs for the parties, the painstaking opinion of the Superior Judge, and the transcript of the evidence which consists of 234 pages. We have no doubt that the evidence fully supports the trial judge's decision and that his weighing of the evidence was righteous and reasonable.

■ The errors assigned in connection with the interpretation of the contract of promise to sell were not committed either. That contract provides that "The prospective vendee shall not take possession of the property until the corresponding deed of sale has been executed and the part of the property belonging to the three coowners appearing herein has been determined." In the first place, it should be noted that the contract does not say that the vendee shall take possession of an abstract right of interest, but that it speaks of taking possession *of the property.* In the second place, the contract also says that the vendee shall not take possession of the property until the deed has been executed and the *part of the property* belonging to the three coowners appearing herein has been determined. It is clear that that last phrase does not refer to undivided parts because that was already known. The sisters are coowners of the property in equal parts. What was not known, and for which the division of the property was necessary, was what physical part would correspond to the vendor sisters and what physical part would correspond to Francisca. The contract referred to that. In the third place, in the light of the evidence, it is incredible that Shivell should wish to buy an undivided interest in order to become a partner of Francisca or in order that the latter should redeem from him. The evidence is abundant on this point. (Tr. Ev. 21, 64, 76, 87–88, 92, 123–24, 228.)

A passage of the record reveals Annoni's conduct. As we have stated before, he himself proposed the manner in which the property was divided. The record shows that at first Annoni did not have the money to buy the vendor sisters' share, and that he watched very closely the division of the property in order to protect his wife's interests. Afterwards Annoni obtained the money and, hence, came the change in his attitude, in his wife Francisca, and also in Rosa María and María Teresa who later made common cause with their sister Francisca. Sara is the one who adhered to the obligation contracted in July 1962. Referring to the division of the property, Annoni testified that "If he did not obtain the money, that was well done." Thereupon the vendee's attorney asked him, "But since you obtained the money, you backed out?," and Annoni answered "Ah, of course!" (Tr. Ev. 218.)

In the eighth error assigned appellants contend that the division of the parcel is unfair and renders it useless for its better use. The evidence showed otherwise. Expert engineer Héctor Deliz, a professional of wide experience in that specialization, testified that the property is divisible; that owing to its configuration and shape, the devision made by the engineer and professor of the College of Mechanical Arts, Eduardo Ramírez, was in his opinion "the most logical and reasonable subdivision" of the property; that the segregation of a parcel does not prejudice the other at all; and that it does not detract in any way from its value. (Tr. Ev. 108–11.) The error was not committed.

In the third error assigned, the last in our discussion, appellants allege that Annoni did not oblige his wife Francisca because he did not have express agency evidenced by public instrument. They are not right. In the first place, Sara, Rosa María and María Teresa bound themselves to segregate their joint interests from that of Francisca and

to sell their shares to Shivell. They are bound by the contract of July 19, 1962. Francisca did not bind herself to sell and shall retain her share. But Francisca cannot oblige the other co-owners to remain in the community. Section 334 of the Civil Code, 31 L.P.R.A. § 1279.

In the second place, Annoni's frequent and direct intervention in the negotiations which culminated in the contract of July 19, 1962, and his wife's acquiescence show that there was an implied agency on the part of Francisca to her husband Roberto Annoni. No agency evidenced in a public instrument is necessary for the act of division because it is not an act of strict dominion. The division among the participants in the community is a declarative act and not an act of conveyance. It does not convey, but declares and specifies the content of the right which the coparticipants already had since the commencement of the community. The Code itself provides that "Each one of the participants of a thing possessed in common is deemed to have possessed the part allotted to him upon the division thereof during the whole time that the property remained intact." Section 379 of the Civil Code, 31 L.P.R.A. § 1465. III Puig Brutau, *Fundamentos de Derecho Civil* 274 (1953); Velázquez, *Los Derechos Reales Principales* 147 (1937). Since the division of the co-ownership and the division of the inheritance possess in this sense common characteristics, the Code assimilates both situations and provides that the rules relating to the division of the inheritance shall apply to the division among part owners, § 340, 31 L.P.R.A. § 1285, and, as is known, the division of the inheritance is not an act of strict dominion but one of administration and declaration. VII Messineo, *Derecho Civil y Comercial* 381 (Spanish translation by Sentis Melendo, 1956); II-2 Ruggiero, *Instituciones de Derecho Civil* 385 (Spanish translation of the Italian 4th ed.); Puig Brutau, *ibid.*; I *Diccionario de Derecho Privado*

172 (1954). Referring to the declarative character of the division, Messineo explains:

"Declarative character imports that the same produces, not attributive, conveyance, or dispositive effects, but *distributive* effects, that is, in conformance with its functions and its nature, those that determine concretely—in the act of terminating the hereditary community—the *concrete* part of the properties corresponding to each one of the joint owners, *specifying the content of that right.* Consequently, the division is no *cause for the acquisition* of the properties corresponding to the joint owner (the acquisition is deemed to have taken place already *by virtue* of designation, if followed by the *acceptance*)." *Op. cit.* at 381.

Already in *Milán* v. *Registrar*, 41 P.R.R. 98, 99 (1930), we had recognized the difference between an act of strict dominion, such as alienation, and an act of division of a community of coheirs. Of course, in this case the redemption of co-owners would not be proper because it does not meet the necessary requirements. *Fuertes* v. *Arzón*, 81 P.R.R. 479, 485 (1959).

Summing up, Sara, Rosa María and María Teresa were bound to divide and to sell. Francisca is bound to consent to the division because the law denies her the power to oblige the other co-owners to remain in the community.

In short, in this case two persons (Rosa María and María Teresa Barber) bound themselves to sell certain land to a particular buyer and afterwards desisted. Now they seek a provision in the law which will permit them to break away from their commitment. It seems to us that the Civil Law is not useful for that.

For the reasons stated herein, the judgment rendered in this case by the Superior Court, Mayagüez Part, on April 30, 1964, will be affirmed. The costs of this petition shall be imposed upon appellants Francisca Barber de Annoni, Rosa María Barber, and María Teresa Barber de Silva.